FILED '08 JUL 22 12:14 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW BAUMHOVER,  )
　　　　　　　　　　 )
　　　　Plaintiff,　 )　Civ. No. 07-647-TC
　　　　　　　　　　 )
　vs.　　　　　　　　)
　　　　　　　　　　 )
　　　　　　　　　　 )　OPINION AND ORDER
　　　　　　　　　　 )
NORTH BEND MEDICAL CENTER, INC.,)
an Oregon cooperative,　　　　　)
　　　　Defendant.　 )
_____)

COFFIN, Magistrate Judge.

　　Before the court is defendant's motion for summary judgment (#15). For the reasons that follow, summary judgment is granted in part and denied in part.

BACKGROUND

　　The record discloses the following facts. Plaintiff worked as a radiology technician from April 22, 2004, until April 1, 2005. Like other radiology employees, plaintiff punched in and out on a computerized time clock. When an employee forgot to do so, plaintiff's supervisor, Kathy Rose, would adjust the time entry; she also made slight adjustments rounding work hours up or down. If an employee happened to work extra time on one day, he

1 Opinion and Order

or she was instructed to make an adjustment to the work schedule within the week (by taking longer breaks or leaving work early) so that the work-week's hours would not exceed 40. Plaintiff contends that there were times when he worked longer than 40 hours in a week but was paid only for 40. Rose asserts that she was never informed of any such occasions or salary discrepancy. Plaintiff did not record any time spent working more than 40 hours per week and does not know what overtime wages, if any, are due to him.

Over the course of his employment with defendant, plaintiff received a number of negative performance evaluations, and Rose counseled him concerning interpersonal interactions with other staff and noncompliance with work procedures. For example, in September 2004, Rose issued plaintiff an Employee Warning and Separation Report concerning problematic interaction with coworkers, including incidents in which plaintiff raised his voice in anger at others and threw an item at a coworker. Plaintiff refused to respond to the complaints and was warned that further displays of anger would not be condoned, that his behavior would be reviewed daily and documented over 30 days, and that further incidents could lead to termination.

During the following month, Rose held weekly discussions with plaintiff concerning his performance. She issued another Employee Warning and Separation Report on October 4, 2004, documenting plaintiff's deficiencies in department operations. Rose received reports that plaintiff was rude to telephone callers and demonstrated frustration when using the phones. Plaintiff was told to take an active role in seeking out the

2 Opinion and Order

cause of his frustrations and in working with Rose to resolve the problems. Again, he was warned that the matters would be reviewed and documented over the next thirty days, and that further problems could lead to dismissal.

On November 8, plaintiff received another performance review. He was informed that he needed to improve his responsiveness and helpfulness to telephone callers, and he was told to take an active role in determining which areas of training would allow him to participate more fully in the functioning of the department. There were no complaints concerning plaintiff's anger or rudeness. He was informed that those matters would be tracked and addressed as necessary.

In deposition testimony, plaintiff acknowledged that Rose evaluated his performance and instructed him to improve, particularly in his interpersonal communications. He objected to the paperwork and administrative requirements required at North Bend Medical Center, reasoning that they were greater than requirements at other places of employment, and he was frustrated with his employer's training for the administrative work.

Plaintiff injured his back while at work in January 2005 and, with the help of his employer, filed for workers' compensation benefits. Plaintiff was removed from duty from January 25 until February 28 and was thereafter restricted to light duty. Upon his return, Rose consulted with him about the type of work available under his limitations.

On March 7, defendant told plaintiff that it had no work to assign within the light-duty restriction, and plaintiff was off work until March 21.

3 Opinion and Order

In late March, additional concerns about plaintiff's performance were reported. Plaintiff failed to place a paper gown on an adolescent in preparation for a knee x-ray, and he failed to follow department procedures for tracking x-rays. In addition, a female coworker, Philisty Garnett, reported that plaintiff made sexually suggestive comments to her. In particular, she reported that plaintiff approached her as she was eating chicken for lunch and asked whether she "had saved some lunch for him because he would like [her] breast, thigh, and leg." Plaintiff does not admit making this comment. Garnett also reported that, the following day, plaintiff came to her office and asked whether she would "come out and play." Plaintiff admits making this comment.

Garnett and a coworker reported plaintiff's comments to Dr. Nguyen, who relayed them to Rose. Plaintiff was suspended pending an investigation. Rose and Human Resource Coordinator Cheryl Hodkinson concluded that Garnett's allegations were substantiated, and that the comments were overheard by other employees and made in an area where patients could have heard them. Rose further concluded that plaintiff's sexual comments, along with his performance problems, indicated that he could not satisfy the functions of his job, and he was terminated on April 1.

In the days prior to his termination, plaintiff was informed that he was under investigation for violation of defendant's harassment policy. When Rose met with plaintiff to notify him of the termination decision, plaintiff spoke first, angrily pulling his license from the wall and asking, "Do I have a job or not?"

4 Opinion and Order

Rose reported that defendant was terminating him and asked whether he wanted to know the investigation results. He said that he did not.

After his termination, plaintiff filed a complaint with the Oregon Bureau of Labor and Industries (BOLI), which investigated his assertion that he was fired in retaliation for filing a workers' compensation claim. The BOLI investigator determined that substantial evidence indicated that defendant was motivated by his industrial injury and use of the Workers' Compensation system.

Plaintiff now brings an action claiming that he was discriminated against for invoking his statutory rights under the Workers' Compensation scheme in violation of Or. Rev. Stat. 659A.043[1] and denied unpaid overtime wages in violation of 29 U.S.C. section 207. Defendant moves for summary judgment on those claims. For the following reasons, defendant's motion is granted in part and denied in part.

## STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact is resolved against

---

[1] Plaintiff's workers' compensation discrimination claim is now confined to his assertion of wrongful termination from employment; he has abandoned his second workers' compensation claim based on defendant's alleged failure to reinstate. Complaint §§ 24-30; Plaintiff's Memorandum in Opposition, 1.

5 Opinion and Order

the moving party, Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976), and any inferences drawn from the underlying facts are viewed in the light most favorable to the nonmoving party. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Id. at 323-24.

## ANALYSIS

### Unpaid Overtime Wages

In order to merit summary judgment on plaintiff's unpaid overtime wages claim under 29 U.S.C. section 207, defendant must demonstrate the absence of any genuine issue of material fact in the record concerning whether it wilfully employed plaintiff for

6 Opinion and Order

a workweek longer than forty hours without compensating plaintiff at the statutory overtime rate.[2]  Defendant has done so.

The record before the court does to give rise to an issue of fact on this matter.  Plaintiff asserts that, although "it didn't happen a lot," there was an occasion in which he worked longer than 40 hours and was uncompensated for any overtime.  However, the record provides no evidence to support this claim.  Plaintiff has been provided with time records for the period of his employment.  In certain instances, he clocked out later than the end of an eight-hour work day, and his work time was rounded down by Rose.  Typically, the rounded-down time was approximately fifteen minutes.  Plaintiff points to 8.25 hours total over the course of his employment with defendant when his departure time was rounded down.  Leaving late was permissible under the employer's policy, provided that the employee offset any extra work time by taking longer breaks or an early departure during the rest of the work week.  Plaintiff has not demonstrated that he did not compensate for that time (as employees were instructed to) by

---

[2] Defendant argues that this claim is untimely because it was filed more than two years after plaintiff's termination, in violation of 29 U.S.C. section 255(a).  Plaintiff argues that his claim falls instead within the three-year limitation period permitted under the same provision for "willful" Fair Labor Standards Act violations.  Defendant counters that plaintiff's claim must nonetheless fail because he did not plead willfulness.  The court disagrees.  Under our notice pleading standard, the absence of the term "willful" does not deprive plaintiff of the claim where facts alleged provide fair notice that plaintiff asserts a willful violation.  See Mavrinac v. Emergency Medicine Ass'n of Pittsburgh (EMAP), Civil Action No. 04-1880, 2007 WL 2908007, at *9 (W.D. Pa., Oct. 2, 2007) (holding same).  Here, plaintiff pleaded that defendant "required or suffered Plaintiff to work more than 40 hours per workweek" without appropriate compensation.  Plaintiff's pleading is adequate, and his claim for a willful FLSA violation is therefore timely.

7 Opinion and Order

lengthening his fifteen-minute morning or afternoon breaks. Thus, on this record, the late departures alone do to give rise to a genuine issue of material fact on this claim.[3]

Further, plaintiff has not pointed the court to evidence in the record indicating a "willful" FLSA violation; rather, Rose's declaration plainly indicates that employees were informed of the time clock policy and encouraged to (1) refrain from working more than 40 hours, and (2) offset time that exceeded an eight-hour work day by reducing work time during the week.

Because plaintiff has not demonstrated a triable issue on this record, summary judgment on the overtime claim is appropriate.

Workers' Compensation Discrimination

Under Or. Rev. Stat. section 659A.040, a plaintiff establishes a prima facie case for workers' compensation

---

[3] Plaintiff appears to contend that overtime is warranted regardless of whether plaintiff offset the additional minutes worked on particular days because break time constituted compensable work time. To support his argument, plaintiff relies on Gafur v. Good Samaritan Hospital, 185 P.3d 446 (Or. 2008), which held that, for certain purposes under Oregon law, breaks can constitute work time.
That standard is not applicable here. Plaintiff brings his claim under the Fair Labor Standards Act, 29, U.S.C. section 207 et seq. Under the FLSA, the proper test of whether a break or meal period is excepted from FLSA overtime provisions focuses on whether the period was used predominantly or primarily for benefit of employer or for benefit of the employee. See Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944); Aeromotive Metal Products, Inc. v. Wirtz, 312 F.2d 728 (9th Cir. 1963). No evidence in the record would permit the conclusion that plaintiff's breaks were used primarily for the employer's benefit; for this reason, I do not deem the breaks to constitute compensable work time. Because the break time is not compensable, and because plaintiff has not demonstrated that additional minutes worked in an eight-hour day were not offset under the employer's policy of extending break time in such cases, plaintiff's FLSA claim fails on summary judgment.

8 Opinion and Order

retaliation by demonstrating that (1) he invoked a right under the workers' compensation scheme, (2) was discriminated against in the tenure, terms, or conditions of employment, and (3) the invocation of a workers' compensation right was a substantial factor in the adverse employment action. Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1063 (9th Cir. 2005); McPhail v. Milwaukie Lumber Co., 999 P.2d 1144 (Or. App. 2000).[4]

If the plaintiff succeeds in making a prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. Finally, if the employer satisfies this burden, the employee must show that the "reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (quoting Tex. Dep't

---

[4] Defendant asserts that plaintiff's worker's compensation retaliation claim is untimely because (1) he did not timely file, and (2) the Oregon Bureau of Labor and Industries (BOLI) issued its opinion after its statutory period of jurisdiction over the matter expired. The court disagrees. First, plaintiff transmitted his BOLI complaint via fax on March 31, 2007, within one year of his termination, see Or. Rev. Stat. § 659A.982(1) (allowing one year for filing of BOLI complaint), and no state law authority prohibits filing via fax. Second, although Or. Rev. Stat. section 659A.830(3) authorizes the BOLI Commissioner to "conduct investigations or other proceedings" within a year of filing to resolve a complaint, I do not read that statute so narrowly as to deem extrajurisdictional the issuance of a Notice of Substantial Evidence Determination within three days of the close of the one-year period. Necessarily, BOLI's "investigations" took place within the statutory period. Plaintiff filed this complaint within the relevant statutory periods, and the claim is timely.

9 Opinion and Order

of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)).[5]

Concerning plaintiff's prima facie case, it is clear that he submitted a workers' compensation claim and was subsequently terminated. Plaintiff argues that an issue of fact is raised on the causation question because Rose spoke to him about his claim in an unfavorable way when attempting to accommodate his restrictions. Specifically, plaintiff asserts that Rose stated, "Do you know what kind of bind that is going to put us in?" when she learned that plaintiff was required to take medical leave. Plaintiff also argues that Rose expressed displeasure with him when he worked for a period after having been released to light duty and was sent home after being told by Rose that she "needed a tech." He also states that Rose reported that she did not have light duty work for him for a period, and required him to have a full duty release before returning to work. He further asserts that defendant's hire (and subsequent retention) of a temporary employee to relieve the radiology tech workload during plaintiff's period of medical limitation indicates that defendant intended to replace him permanently. Finally, plaintiff argues that the short time span that elapsed between his termination and his taking medical leave and light duty work could permit a juror to infer

---

[5] A federal court sitting in diversity or exercising supplemental jurisdiction over state law claims must apply state substantive law, but a federal court applies federal rules of procedure to its proceedings. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415 (1996); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 92,(1938) (Reed, J., concurring in part) ("[N]o one doubts federal power over procedure."). The Ninth Circuit has expressly held that the McDonnell Douglas burden-shifting paradigm is a federal procedural rule, which federal courts apply to summary judgment motions. Snead v. Metropolitan Property & Cas. Ins. Co., 237 F.3d 1080, 1092 (9th Cir. 2001). Thus, the court applies burden shifting in its analysis of plaintiff's state statutory discrimination claims.

10 Opinion and Order

that defendant's motive was retaliatory.

For her part, Rose declared that she did not require plaintiff to have a full medical release in order to return to work; rather, she sought direction concerning plaintiff's restrictions so that he could be assigned appropriate tasks. Rose Decl. at 2. Defendant also counters plaintiff's assertions by pointing to his history of interpersonal conflict in the workplace and his noncompliance with department protocols, and by arguing that his termination was simply unrelated to his application for workers' compensation benefits (which defendant's staff helped him to complete). Defendant further asserts that the timing of plaintiff's termination does not assist his case. The harassment claim was reported to Rose on March 24, days after plaintiff had returned from medical leave, and therefore no investigation was undertaken until after plaintiff had returned to full time work.

Although the evidence in plaintiff's favor is slight, I conclude that he has raised a jury issue on the question of causation. Plaintiff's evidence consists of his own contested assertion that Rose required him to obtain a full duty release, that she made remarks indicating the accommodation required by his leave, and the short time that elapse between his medical leave and his termination. I do not credit his argument that the hire of a replacement technician indicates a retaliatory motive; there is no circumstantial evidence indicating such a relationship. When the record is considered on the whole, however, plaintiff's evidence raises a jury question on causation.

The burden now shifts to defendant to demonstrate a legitimate, nondiscriminatory reason for plaintiff's termination.

11 Opinion and Order

Here, defendant has met its burden. As explained in the recitation of facts, the record indicates that plaintiff had a history of workplace problems that gave rise to complaints from colleagues and continuing disciplinary action. A human resources investigation led to the conclusion that plaintiff violated the North Bend Medical Center harassment policy when he made suggestive comments to a female coworker. This evidence satisfies defendant's burden.

Plaintiff now assumes the burden to demonstrate a genuine issue of material fact indicating that defendant's proffered reason for termination is pretextual. As noted above, plaintiff may do so "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Chuang, 225 F.3d at 1123-24. Although plaintiff retains the burden of persuasion, "he does not necessarily have to introduce additional, independent evidence of discrimination at the pretext stage" if the evidence in his prima facie case is sufficient to carry the burden on this element. Id. at 1127. It is the totality of the evidence to which the court ultimately looks. Id.

Plaintiff proffers the statement of a BOLI investigator in order to argue that defendant's proffered explanation for his termination is pretextual. In particular, he offers a conclusion of the investigator stating, "it appears that Respondent's proffered reasons for Complainant's dismissal were 'puffed up' and largely pretextual." This out-of court statement, when offered for its truth, constitutes inadmissible hearsay. See Fed. R.

12 Opinion and Order

Evid. 802. Plaintiff does not explain which, if any, exception to the hearsay rule might apply. As such, I do not consider it. See Grassmueck v. Johnson Controls Battery Group, Inc., Civil No. 06-526-ST, 2007 WL 1989579 (D. Or., July 2, 2007) (excluding hearsay statements within BOLI investigative report in worker's compensation retaliation claim).

In order to persuade the court that a jury issue exists concerning whether a discriminatory reason "more likely motivated the employer," plaintiff reasserts the evidence for the causation prong in his prima facie case and adds that the BOLI investigator's Notice of Substantial Evidence Determination, which concluded that substantial evidence indicated that defendant was motivated by his industrial injury and use of the Worker's Compensation system, illustrates his case.

The admissibility of the ultimate result of the BOLI investigation, the BOLI investigator's substantial evidence determination (as opposed to the hearsay statements contained within the report), is an unsettled matter. As Judge Stewart notes in Grassmueck v. Johnson Controls Battery Group, Inc., the Oregon Court of Appeals has rejected the admissibility of such conclusions where they are based on hearsay. The state court has explained:

> the ultimate opinion at which [BOLI] arrives-that there is substantial evidence of discrimination-was not, and was not designed to be, a determination of the truth of a fact, but was merely a preliminary conclusion that sufficient grounds existed for the continuation of an administrative process that, had it been followed to its conclusion, would eventually culminate in a determination about the truth of the fact.

Sleigh v. Jenny Craig Weight Loss Ctrs., Inc., 984 P.2d 891  893

13 Opinion and Order

(Or. App.), modified on recons. on other grounds, 988 P.2d 916 (1999). Considerations that have not been aired in the summary judgment argument (e.g., the purpose of the evidence, admissibility of underlying statements, the extent of any subsequent administrative proceedings) would seem to implicate the question of whether the evidence is admissible.[6]

However, setting aside the BOLI determination, other evidence in the record is sufficient to raise a jury question on pretext. As noted above, there is a discrepancy in the record concerning whether Rose required plaintiff to acquire a full work release before returning to work. If true, it could raise an inference that she acted in a punitive manner after plaintiff filed for workers' compensation benefits. In addition, her comments to plaintiff, which could indicate a measure of exasperation or hostility about his unavailability, could support the same inference. The fairly short time span between his medical absences for the work-related injury and his termination could likewise call into question defendant's stated motive for

---

[6] The court acknowledges authority in the Ninth Circuit holding that EEOC probable cause determinations may be admissible, Plummer v. Western Int'l Hotels Co., Inc., 656 F.2d 502, 504 (9th Cir. 1981), but notes that the Ninth Circuit has not issued any similar pronouncements with respect to Oregon BOLI Notices of Substantial Evidence Determination. Further, I acknowledge a line of cases that emphasize the court's role in weighing the probative value of such filings against their potential for prejudice, e.g., Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1500 (9th Cir. 1986). Within this district, in a case concerning administrative findings of a municipal agency, Judge Stewart has cautioned that "[a]n agency's findings of probable cause are not necessarily admissible under Fed. R. Evid. 403." Hess v. Multnomah County, 211 F.R.D. 403, 407 (D. Or. 2001). In light of the limited briefing on this issue and the availability of other evidence to raise a genuine issue of material fact on the pretext prong, I defer until the parties' pretrial conference or until trial the resolution of any questions concerning the admissibility of the BOLI report and the investigator's ultimate determination.

14 Opinion and Order

terminating him, or, alternatively, indicate that his termination was motivated both by his misconduct and by his protected activity.

In sum, plaintiff has raised a genuine issue of material fact on the issue of pretext and withstands defendant's motion for summary judgment on the workers' compensation retaliation claim.

## CONCLUSION

Defendant's motion for summary judgment (#15) is granted in part and denied in part.

IT IS SO ORDERED.

Dated this 22 day of July, 2008.

THOMAS M. COFFIN
United States Magistrate Judge

15 Opinion and Order